CHRISTOPHER R. RODRIGUEZ (SB# 212274)
crodriguez@singletonschreiber.com
ANDREW D. BLUTH (SB# 232387)
abluth@singletonschreiber.com
JOHN R. TERNIEDEN (SB# 330343)
jternieden@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

DAVID GREIFINGER, (SB# 105242)
tracklaw@me.com
**LAW OFFICES OF DAVID R. GREIFINGER**
14016 Bora Bora Way, No. 208
Marina del Rey, CA 90292
Telephone: (310) 437-0728
Facsimile: (831) 920-4864

*Attorneys for Plaintiffs and the Putative Class*

*(Additional Counsel Listed on the Signature Page.)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE PROUDFOOT, an individual; STUART L. OKEN, an individual; LAURA L. WOZNIAK, an individual; and RACHEL GROSSMAN, an individual; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NISSAN NORTH AMERICA, INC., a Delaware corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs GRACE PROUDFOOT, STUART L. OKEN, LAURA L. WOZNIAK, and RACHEL GROSSMAN ("Plaintiffs"), by and through their undersigned counsel, on their own behalf and on behalf of all other persons similarly situated, sue NISSAN NORTH AMERICA, INC. ("Nissan") and Does 1 through 100 ("Doe Defendants") (Nissan and Doe Defendants are collectively referred to herein as the "Defendants") and for this Complaint, allege upon information and belief, and based on the investigation to date of their counsel, as follows:

### INTRODUCTION

1.      The Nissan Leaf is an electric car designed and manufactured by Nissan Japan and marketed, distributed, sold, warranted and serviced by Nissan. As further alleged below, Defendants made materially misleading representations and omissions regarding the Nissan Leaf's charging capabilities. Defendants also failed to disclose and/or intentionally omitted to reveal a uniform design defect in the Nissan Leaf's charging system that eliminates (or at least significantly compromises) the Level 3 fast-charging capabilities of Nissan Leaf vehicles.

2.      Specifically, the 2019 through 2022 Nissan Leaf models suffer from a significant defect that causes a substantial fire risk during Level 3 fast charging. The issue stems from the potential for the high-voltage battery to overheat during fast charging, which can lead to a fire.  Nissan confirmed that certain Nissan Leaf models have excessive lithium deposits in their battery cells that are a cause of this issue. Nissan knew or should have known about this dangerous defect in the vehicles at issue before the widespread marketing and sale/lease of the vehicles.

3.      In or about October 2024, Nissan sent owners/lessors of affected vehicles, including Plaintiffs, a notice regarding the fast charge issue for the 2019-2020 Nissan Leaf.  This was titled an "Interim Owner Letter" and instructed owners not to use Level 3 (DC) fast chargers until the recall remedy was completed.  This notice left these affected individuals, including Plaintiffs, with no way to quickly

charge their vehicles, thus greatly reducing the effective range and utility of their vehicles.

4.    To remedy Defendants' misconduct, Plaintiffs bring this action pursuant to applicable consumer protection statutes, on behalf of themselves and all current owners or lessees in California and Oregon of 2019 to 2022 Nissan Leaf vehicles (collectively, "Class Vehicles"). Plaintiffs seek appropriate damages, civil penalties, and/or restitution, as well as an order compelling Nissan, among other things, to (1) remove and replace Plaintiffs' and class members' charging systems with a suitable alternative product for the Nissan Leaf that does not contain the defects alleged herein; and/or (2) compelling Nissan to reform its Nissan Leaf charging and battery warranty, in a manner deemed to be appropriate by the Court, to cover the loss of charging and battery functionality under warranty as alleged herein and to notify all class members that such warranty has been reformed.

5.    The Nissan Leaf is an electric vehicle propelled by an electric motor and powered by a rechargeable lithium-ion battery pack. Instead of adding gasoline or diesel fuel to a gas tank, Nissan Leaf owners are supposed to be able to charge their vehicles at Level 3 charging stations or using at-home chargers.  The use of Level 3 charging stations is advertised as a way to quickly replenish the charge on Nissan Leaf vehicles, which makes it possible for the completion of longer trips without having to wait hours for a full re-charge.

6.    However, as a result of defective charging systems in the Class Vehicles, Plaintiffs and all class members have been wrongfully deprived of the ability to use Level 3 charging, thus depriving them of a significant component of the value of the Class Vehicles.

7.    By making false, fraudulent, and misleading statements to consumers, Defendants made substantial profits and deceived thousands of consumers, including Plaintiffs, who purchased or leased the Class Vehicles under the false belief that they could quickly charge their vehicles at Level 3 fast charging stations.

CLASS ACTION COMPLAINT

8.    Consumers have been misled, induced, and defrauded into spending money and thus harmed by Defendants' fraudulent misrepresentations, false advertising, and unfair, unlawful and fraudulent business practices.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action under 28 U.S.C.§ 1332(d) of the Class Action Fairness Act because the aggregated claims of the class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and at least one Class Member (defined below) is a citizen of a state different from Defendants.

10.    Venue is proper in this District pursuant to 28 U.S.C.§ 1391 because: (i) the Nissan entities are actively doing business in California and subject to personal jurisdiction throughout California; (ii) Defendants transact business in California and in the District based on sales of Nissan vehicles to residents of the District; and (iii) upon information and belief Defendants have committed unlawful acts in the District by and through their sales and/or marketing practices within the District.

## PARTIES

11.    Plaintiff GRACE PROUDFOOT is a citizen of the State of California and a resident of San Luis Obispo County.  Plaintiff Proudfoot was deceived by the fraudulent and misleading representations of Defendants (and or their failure to disclose material facts), which were a material factor in her decision to purchase a Class Vehicle—a 2019 Nissan Leaf Plus.  Ms. Proudfoot purchased her vehicle on or about July 3, 2023, primarily for her own personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

12.    Plaintiffs STUART L. OKEN and LAURA L. WOZNIAK, a married couple, are citizens and resident of the State of Oregon.  They were deceived by the fraudulent and misleading representations of Defendants (and or their failure to disclose material facts), which were a material factor in their decision to purchase a Class Vehicle—a new 2020 Nissan Leaf SL Plus.  Dr. Oken and Ms. Wozniak

purchased their vehicle on or about March 7, 2021, primarily for their personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

13.     Plaintiff RACHEL GROSSMAN is a citizen and resident of the State of Oregon.  She was deceived by the fraudulent and misleading representations of Defendants (and or their failure to disclose material facts), which were a material factor in her decision to lease a Class Vehicle—a 2020 Nissan Leaf SV Plus Hatchback.  Ms. Grossman leased her vehicle on or about January 13, 2021, primarily for her personal, family, or household use. Nissan manufactured, sold, leased, distributed, advertised, marketed, and warranted the vehicle.

14.     Defendant Nissan is an automobile design, manufacturing, distribution, and/or servicing corporation doing business in all 50 states. Defendants design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including Class Vehicles, nationwide.

15.     The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of the Doe Defendants, inclusive, and each of them, are unknown to Plaintiffs at this time, who therefore sues such Doe Defendants by such fictitious names.  Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a Doe Defendant caused injuries and damages proximately thereby to Plaintiffs as hereafter alleged, and that each Doe Defendant is liable to Plaintiffs for the acts and omissions alleged herein below, and the resulting injuries to Plaintiffs, and damages sustained by Plaintiffs.  Plaintiffs will amend this Complaint to allege the true names and capacities of said Doe Defendants when the same are ascertained.

## **FACTS COMMON TO ALL CLASS MEMBERS**

16.     Nissan is one of the largest automobile manufacturers in the world and sells its vehicles and associated services to consumers across the United States—including California.

17.     The Nissan Leaf was the first mass produced electric car and is one of the most affordable electric vehicles (EV) on the market. Given the vehicle's affordability, it has seen significant sales since its debut in 2010.  According to Nissan's own sales data, between 2019 and 2022 alone, Nissan sold approximately 48,295 Nissan Leaf vehicles (the Class Vehicles) in the USA.

18.     However, the Nissan Leaf has been plagued with battery and charging issues since inception. This is, in part, because unlike many EVs on the market, the Nissan Leaf did not include an active thermal management system to maintain the battery's temperature at an ideal level. This can create problems for the battery's health, charging speeds, and range, particularly in very cold or hot weather. The lack of a thermal management system can also cause the battery to overheat, with potentially dangerous consequences.

19.     Plaintiffs are informed and believe, and thereon allege, that prior to marketing and selling these Class Vehicles, Nissan thoroughly tested the vehicles and was aware of the consequences of failing to include a thermal management system. Indeed, Nissan was subject to a prior litigation for its 2011-2012 model Leafs based on issues arising from the lack of a thermal management system for the EVs battery. Thus, based on information already in its possession and/or through its pre-marketing testing process, Nissan learned—or at a minimum should have learned—that the Class Vehicles suffered from a dangerous defect that can cause the lithium-ion batteries in the vehicles to overheat during fast charging sessions.

20.     Despite knowing about this dangerous defect in the Class Vehicles, Nissan proceeded to market and sell the Class Vehicles to the public without informing the consuming public about the defect in the charging system. To the contrary, Nissan falsely advertised that the Class Vehicles were designed so that they could be quickly charged at Level 3 charging stations so that drivers could complete long drives without having to wait hours to re-charge the battery.

21.     Over time, the individuals that purchased the Class Vehicles began to

CLASS ACTION COMPLAINT

discover the defectiveness of the charging system.  Some owners experienced battery fires as a result of the defective condition of the Class Vehicles.  Others began to experience other related problems, such as slowed charging speeds designed to prevent the battery from overheating and catching fire.  As owners of the Class Vehicles experienced and reported these problems, the true nature and extent of the defects eventually came to light

22.    In 2024, Nissan advised owners of the Class Vehicles to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.  Even worse, Nissan has at all times known that the defect at issue is not something that can be remedied by a "software fix."

23.    Recently, Nissan announced that the next generation of Nissan Leafs will be equipped with a liquid cooling pack to maintain the battery's temperature.

24.    As a result of Nissan's unlawful and fraudulent conduct, tens of thousands of Class Vehicle owners have been deprived of the full value of the vehicles that they purchased based on Nissan's misrepresentations and non-disclosures.  Among other things, owners of Class Vehicles are unable to take long trips and experience significant loss of value when they trade-in and/or re-sell their Class Vehicles.

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

25.    On or about July 3, 2023, Plaintiff Grace Proudfoot purchased her 2019 Nissan Leaf Plus.  At the time she purchased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations. This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs and thus take several hours to achieve a full charge.

CLASS ACTION COMPLAINT

26.     In or about October 2024, Plaintiff Proudfoot received a notice from Nissan advising her about the defective charging/battery system and directing her to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

27.     On or about March 7, 2021, Plaintiff Stuart Oken purchased his 2020 Nissan Leaf SL Plus.  At the time he purchased the vehicle, he believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations. This belief was of critical importance because he believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, he could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations that take several hours to achieve a full charge.

28.     In or about October 2024, Plaintiff Oken received a notice from Nissan advising him about the defective charging/battery system and directing him to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

29.     On or about January 13, 2021, Plaintiff Rachel Grossman leased her 2020 Nissan Leaf SV Plus Hatchback.  At the time she leased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations.  This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs and thus take several hours to achieve a full charge.

30.     In or about October 2024, Plaintiff Grossman received a notice from Nissan advising her about the defective charging/battery system and directing her to

CLASS ACTION COMPLAINT

1   avoid Level 3 fast charging until a "software fix" was implemented. Almost a full

2   year later, Nissan has not provided any such fix.

3                        **CLASS ACTION ALLEGATIONS**

4        31.    Pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3), or alternatively (c)(4) of

5   the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of

6   themselves and all other similarly situated consumers in the United States as

7   members of the following proposed Oregon and California State classes:

8              a.    **California Class**: During the fullest period allowed by law, all

9   California citizens who bought or leased a Class Vehicle at any time (the "California

10  Class").

11             b.    **Oregon Class**: During the fullest period allowed by law, all

12  Oregon citizens who bought or leased a Class Vehicle at any time (the "Oregon

13  Class").

14             c.    The members of the California Class and Oregon Class are

15  collectively referred to herein as "Class Members."

16             d.    Excluded from the Class are any Defendants, any parent

17  companies, subsidiaries, and/or affiliates, officers, directors, legal representatives,

18  employees, co-conspirators, all governmental entities, and any judge, justice or

19  judicial officer presiding over this matter.

20       32.    Plaintiffs and Class Members bring this action pursuant to FRCP Rule

21  23(a) and (b)(3), on behalf of themselves and all other persons similarly situated for

22  the direct, proximate, and foreseeable injuries caused by Defendants' representations

23  and/or omissions concerning the defective charging system in the Class Vehicles.

24       33.    The requirements of Federal Rule of Civil Procedure 23 are satisfied for

25  the Class.  The proposed California Class and Oregon Class are so numerous that

26  individual joinder of all their members is impracticable because Class Members

27  number in the tens or hundreds of thousands.  The precise number of Class Members

28  and their identities are unknown to Plaintiffs at this time but are objectively

ascertainable and will be determined through appropriate discovery.

34.    Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies Class Members.

35.    Class Members may be notified of the pendency of this action by mail, publication, and/or through the records of Defendants and third-party retailers and vendors.

36.    Like Plaintiffs, all Class Members purchased the Class Vehicles with the misunderstanding, caused by their reliance on Defendants' representations and/or omissions, that the Class Vehicles could be used and operated safely as advertised, with full Level 3 fast charging capabilities.  Such understanding was reasonable and was a material basis for the decision to purchase the Class Vehicles, which Defendants intended to foster through their various marketing activities in connection with the sale of the Class Vehicles.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

37.    There are common questions of law and fact affecting Plaintiffs and Class Members which predominate over any question affecting only individual members. The answers to these common questions will advance resolution of litigation as to all Class Members.  These common legal and factual issues include but are not limited to:

    a.    Whether Defendants marketed and advertised the Class Vehicles in a way that is false, deceptive, and/or misleading.

    b.    Whether by the misconduct set forth in this complaint, Defendants engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

    c.    Whether Defendants' conduct was committed knowingly and/or

CLASS ACTION COMPLAINT

intentionally;

d.    Whether Defendants' conduct constitutes violations of the federal and/or state laws asserted herein;

e.    Whether and when Defendants had a duty to correct their fraudulent statements;

f.    Whether Class Members were harmed by Defendants' false statements;

g.    Whether Defendants were unjustly enriched by their conduct;

h.    Whether Defendants' conduct violates public policy;

i.    Whether Class Members are entitled to punitive damages;

j.    Whether the Class Members are entitled to recover statutory attorney's fees; and

k.    Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

38.    Plaintiffs' claims are typical of the claims of the proposed California Class and Oregon Class because Plaintiffs and Class Members were harmed in the same manner by the same conduct, all of which was intended by Defendants.

39.    Plaintiffs and Class Members have all sustained economic injury arising out of Defendants' violations of common and statutory law alleged herein.

40.    Plaintiffs will fairly and adequately represent and protect the interests of the California Class and Oregon Class.  Plaintiffs intend to prosecute these claims vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class Members, nor are Plaintiffs subject to any unique defenses.

41.    Plaintiffs' interests do not conflict with the interests of the California Class or the Oregon Class they seek to represent. Plaintiffs have retained counsel competent and experienced in prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously.

CLASS ACTION COMPLAINT

42.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.

43.    Given the small relative amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

44.    Individual Class Members will not wish to undertake the burden and expense of individual cases.

45.    In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system.  Individualized ligation also presents the potential for inconsistent or contradictory judgments.

46.    In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

47.    Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members.  Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

48.    In each case, Defendants used deceptive marketing and sales techniques, as well as other underhanded business practices, aimed at the Class Members, causing harm to all Class Members as a result of such intentional conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

49.    Proposed class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class Members.

50.    In addition to, or in the alternative to the above, this case is properly maintained as a class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class Members as a whole, such that final equitable relief is appropriate regarding the Class as a whole.

CLASS ACTION COMPLAINT

51.     Defendants have acted and/or refused to act on grounds applicable generally to the Class Members as a whole. Defendants made representations and/or omissions regarding the Level 3 charging capabilities of the Nissan Leaf to Plaintiffs and Class Members, which they knew or should have known were false, deceptive and/or misleading.

52.     Plaintiffs and Class Members have been injured and continue to be injured by Defendants' acts and/or omissions.    Therefore, Plaintiffs and Class Members seek injunctive relief or corresponding declaratory relief with respect to the class as a whole.

53.     In the alternative, this case is properly maintained as a class action with respect to the following issues under FRCP 23 (C)(4):

a.     The liability of Defendants under Plaintiff's and Class Members' claims for relief resulting from Defendants representations and/or omissions, designed by Defendants and employed to all relevant consumers on a nationwide basis, and made to Plaintiffs and Class Members concerning the Class Vehicles' charging systems;

b.     Whether Defendants owed a duty of care to Plaintiffs and the Class Members;

c.     Whether Defendants knew or should have known that representations and/or omissions made concerning their Class Vehicles were false, deceptive and/or misleading;

d.     Whether Defendants wrongfully represented, and continue to misrepresent, the capabilities and characteristics of the Class Vehicles;

e.     Whether Defendants' representations and/or omissions are true, or are misleading, or objectively reasonably likely to deceive;

f.     Whether Defendants' representations and/or omissions with respect to their Class Vehicles were false, deceptive, and misleading;

g.     Whether Defendants' representations and/or omissions caused

1    Plaintiffs and Class Members to suffer harm; and

2          h.    Whether Defendants knew or should have known that its

3    representations and/or omissions would cause Plaintiffs and Class Members to suffer

4    harm.

5                              **COUNT I**

6                         **(Unjust Enrichment)**

7          **(Against Defendants On Behalf of All Class Members)**

8    54.    Plaintiffs and Class Members reallege and incorporate by reference each

9    allegation set forth above.

10   55.    At all relevant times, Defendants deceptively marketed, advertised, and

11   sold/leased the Class Vehicles to Plaintiffs and Class Members.

12   56.    The Class Vehicles purchased or leased by Plaintiffs and Class Members

13   did not provide the promised performance.

14   57.    Plaintiffs and Class Members conferred a benefit on Defendants in the

15   form of monies that were paid in exchange for the Class Vehicles.

16   58.    Defendants were aware and had knowledge of these non-gratuitous

17   benefits, and, in fact, intended for this to occur as a result of their fraudulent, deceitful

18   marketing and sales practices.

19   59.    Defendants have been unjustly enriched in retaining the revenues

20   derived from Plaintiffs and Class Members' purchases of the Class Vehicles, which

21   retention under these circumstances is unjust and inequitable because Defendants

22   misrepresented and/or omitted material facts concerning the Class Vehicles.

23   60.    Defendants' misrepresentations and/or omissions caused injuries to

24   Plaintiffs and Class Members because no reasonable consumer would have

25   purchased or leased the Class Vehicles if Defendants were honest about the value

26   and the true facts regarding the Class Vehicles were known.

27   61.    Because Defendants' retention of the non-gratuitous benefits conferred

28   on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must

14

pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

## COUNT II

## (Fraud)

### (Against Defendants On Behalf of All Class Members)

62.     Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above, which detail fraud with specificity.

63.     Defendants made affirmative false and misleading statements.

64.     Alternatively, Defendants fraudulently omitted and concealed material facts.

65.     Defendants had knowledge of the falsity of the facts in their misleading statements and/or omissions and/or concealments.

66.     Plaintiffs and Class Members had no means available to determine the falsity of the statements or to discover the omissions and concealment.

67.     Defendants intended for Plaintiffs and Class Members to rely upon their statements, omissions, and concealment.

68.     Plaintiffs and Class Members materially relied upon the statements, omissions, and concealment by purchasing or leasing the Class Vehicles, which no reasonable consumer would have purchased or leased if Defendants were honest about the value and the true facts regarding the Class Vehicles were known.

69.     The reliance of Plaintiffs and Class Members was justifiable and reasonable.

70.     Plaintiffs and Class Members lacked knowledge that the statements were false.

71.     As a direct and proximate result of Defendants' misleading statements and/or omissions, Plaintiffs and Class Members were damaged.

72.     Defendants' actions intentionally harmed Plaintiffs and the other Class Members without just cause, and as such were evil, wanton, reckless, and intentional,

1  and made with deliberate and flagrant disregard for consumers, so as to justify the

2  imposition of punitive damages to punish Defendants and to deter Defendants and

3  others from engaging in similar conduct in the future.

4  **COUNT III**

5  **(Negligent Misrepresentation)**

6  **(Against Defendants On Behalf of All Class Members)**

7  73.   Plaintiffs and Class Members reallege and incorporate by reference each

8  allegation set forth above, which detail Defendants' negligent misrepresentations

9  with specificity.

10  74.   Through their advertising and course of their regular business,

11  Defendants made representations and/or omissions to Plaintiffs and Class Members

12  of material facts concerning the Class Vehicles.

13  75.   Defendants owed Plaintiffs and Class Members a duty to provide the

14  Class Vehicles according to Defendants' representations.

15  76.   Defendants breached their duty owed to Plaintiffs and Class Members

16  by failing to provide the Class Vehicles according to their representations.

17  77.   Defendants failed to act with reasonable care in making the above-

18  mentioned representations and/or omissions concerning their Class Vehicles.

19  Defendants made the above-mentioned representations and/or omissions concerning

20  their Class Vehicles without reasonable grounds for believing them to be true.

21  78.   Defendants made the above-mentioned representations and/or

22  omissions with the intent to induce Plaintiffs and Class Members into purchasing or

23  leasing the Class Vehicles.

24  79.   Defendants knew or should have known that Plaintiffs and the Class

25  Members were ignorant as to the true characteristics, capabilities, and value of the

26  Class Vehicles and that Plaintiffs and Class Members would reasonably rely upon

27  Defendants' representations and/or omissions.

28  80.   Plaintiffs and Class Members did justifiably and reasonably rely on

Defendants' representations and omissions. Plaintiffs and Class Members would not have purchased or leased the Class Vehicles without such statements and/or omissions made by Defendants.

81.    As a result of Defendants' acts and/omissions, Plaintiffs and Class Members were damaged and harmed by Defendants in that they have been deprived of their benefit of the bargain and loss monies they overspent on the Class Vehicles.

## COUNT IV

### (Violation of California's Consumer Legal Remedies Act, Cal. Civil Code § 1750, et seq.)

### (Against Defendants On Behalf of All California Class Members)

82.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

83.    Plaintiff Grace Proudfoot brings this cause of action on behalf of herself and on behalf of the members of the California Class.

84.    Defendants are "persons" as defined by California Civil Code § 176l(c).

85.    Proudfoot and California Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased or leased their Class Vehicles for personal, family or household use.

86.    By failing to disclose and concealing the defective nature of the charging systems from Plaintiffs and prospective California Class Members, Defendants violated California Civil Code § l770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles and their charging systems were of a particular standard, quality, or grade when they were of another. See Cal. Civ. Code §§ 1770(a)(5) and (7).

87.    Defendants violated section 1770(a)(9) of the CLRA by advertising the vehicles with the intent not to sell or lease the vehicles as advertised.

88.    Defendants' unfair and deceptive acts or practices occurred repeatedly

17

in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

89.    Defendants knew that the Class Vehicles and their charging systems suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

90.    Defendants were under a duty to Proudfoot and the California Class Members to disclose the defective nature of the charging systems because: (a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' charging systems; (b) Plaintiff Proudfoot and the California Class Members could not reasonably have been expected to learn or discover that their charging systems had a dangerous safety defect until manifestation or failure; and (c) Defendants knew that Plaintiff Proudfoot and the California Class Members could not reasonably have been expected to learn or discover the safety defect.

91.    In failing to disclose the defective nature of the Class Vehicles and their charging systems, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

92.    In representing that their vehicles safely could be charged at Level 3 charging stations without disclosing dangerous defects prevented the safe use of such charging stations, Defendants knowingly and intentionally affirmatively misrepresented material facts to Plaintiff Proudfoot and California Class Members and breached their duty not to do so.

93.    The facts concealed or not disclosed by Defendants to Plaintiff Proudfoot and the California Class Members are material in that a reasonable consumer would consider them important in deciding whether to purchase or lease a Class Vehicles or pay a lesser price. Had Plaintiff Proudfoot and other California Class Members known that the Class Vehicles could not safely utilize the Level 3 fast-charging feature due to the undisclosed management defect, they would not have

purchased the Class Vehicles or would have paid less for them.

94.    Plaintiff Proudfoot relied on Defendants' misrepresentations and omissions. Plaintiff Proudfoot and the California Class Members are reasonable consumers who do not expect their vehicles to be unsuitable for Level 3 fast charging. This is the reasonable and objective consumer expectation relating to electric vehicles.

95.    As a result of Defendants' conduct, Plaintiff Proudfoot and the California Class Members have been harmed and have suffered actual damages in that the Class Vehicles cannot safely engage in fast charging at Level 3 charging stations due to the defect herein alleged.

96.    As a result of Defendants' conduct, Plaintiff Proudfoot and the California Class Members were harmed and suffered actual damages as a result of Defendants' misrepresentations and omissions with regard to vehicle range and charging times in that they purchased or leased vehicles which do not perform as advertised.

97.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Proudfoot and California Class Members suffered and will continue to suffer actual damages.

98.    Plaintiff Proudfoot and the California Class are entitled to equitable relief.

**<u>COUNT V</u>**

**<u>(Violation of California Business & Professions Code section 17200)</u>**

**<u>(Against Defendants On Behalf of All California Class Members)</u>**

99.    Plaintiff Proudfoot and California Class Members reallege and incorporate by reference each allegation set forth above.

100.    By engaging in the above-described conduct, Defendants acted in a manner that is fraudulent, unlawful, and unfair, and have thus engaged in unfair and unlawful business practices to the extreme detriment of Plaintiffs and the California

19

Class, which conduct is prohibited under California Business & Professions Code §§ 17200, et seq.

101.   Defendants' fraudulent, unlawful, and unfair conduct has allowed Defendants to enrich themselves at the expense of Plaintiffs and the California Class, including through Plaintiffs' and California Class Members' payment of monies to Defendants, including without limitation through the purchase or lease of the Class Vehicles.

102.   Plaintiffs and the California Class are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiffs and the California Class.

## COUNT VI

### (Violation of California Business & Professions Code section 17500)

### (Against Defendants On Behalf of All California Class Members)

103.   Plaintiff Proudfoot and California Class Members reallege and incorporate by reference each allegation set forth above.

104.   Defendants marketing materials and statements concerning the Class Vehicles are commercial advertisements that Defendants intended to disseminate across the United States and California.

105.   By engaging in the above-described conduct, Defendants made false statements in commercial advertisements directed at the public, and have thus engaged in unlawful false or misleading advertising under California Business & Professions Code §§ 17500, et seq.

106.   Defendants' false statements in their commercial advertisements deceived or had the tendency to deceive a substantial segment of their audience and the California Class.

107.   Defendants' deception through their commercial advertisements was material and a substantial reason that Plaintiff Proudfoot and the California Class

20

1  purchased or leased the Class Vehicles.

2      108.   Plaintiff Proudfoot and the California Class were harmed as a result of

3  Defendants' false statements, and are thus entitled to restitutionary and injunctive

4  relief, including without limitation disgorgement of any unlawful gains that

5  Defendants obtained as a result of their unlawful and unfair conduct at the expense

6  of Plaintiff Proudfoot and the California Class.

7  **COUNT VII**

8  **(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty**

9  **Act, Cal. Civil Code §§ 1792 and 1791.1, et seq.)**

10  **(Against Defendants On Behalf of All California Class Members)**

11      109.   Plaintiff Proudfoot and California Class Members reallege and

12  incorporate by reference each allegation set forth above.

13      110.   Plaintiff Proudfoot brings this cause of action against Defendants on

14  behalf of himself and on behalf of the members of the California Class.

15      111.   Defendants were at all relevant times the manufacturer, distributor,

16  warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to

17  know of the specific use for which the Class Vehicles were purchased.

18      112.   Defendants provided Plaintiff Proudfoot and California Class Members

19  with an implied warranty that the Class Vehicles and any parts thereof are

20  merchantable and fit for the ordinary purposes for which they were sold. However,

21  the Class Vehicles are not fit for their ordinary purpose of providing reasonably

22  reliable and safe transportation because, inter alia, the Class Vehicles and their

23  charging systems suffered from an inherent defect at the time of sale and thereafter

24  are not fit for their particular purpose of providing safe and reliable transportation.

25      113.   Defendants impliedly warranted that the Class Vehicles were of

26  merchantable quality and fit for such use. This implied warranty included, among

27  other things: (i) a warranty that the Class Vehicles and their charging systems were

28  manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for

providing transportation; and (ii) a warranty that the Class Vehicles and their charging systems would be fit for their intended use while the Class Vehicles were being operated.

114.   Contrary to the applicable implied warranties, the Class Vehicles and their charging systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Proudfoot and the California Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective design of their charging systems.

115.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## COUNT VII

### (Violation of the Oregon Unlawful Trade Practices Act)

### (Against Defendants On Behalf of All Oregon Class Members)

116.   Plaintiffs Oken, Wozniak, Grossman and Oregon Class Members reallege and incorporate by reference each allegation set forth above.

117.   By engaging in the above-described conduct, Defendants acted in a manner that is fraudulent, unlawful, and unfair, and have thus engaged in unfair and unlawful business practices to the extreme detriment of Plaintiffs and the Oregon Class, which conduct is prohibited under the Oregon Unlawful Trade Practices Act.

118.   Defendants' fraudulent, unlawful, and unfair conduct has allowed Defendants to enrich themselves at the expense of Plaintiffs Oken, Wozniak, Grossman and the Oregon Class, including through their payment of monies to Defendants, including without limitation through the purchase or lease of the Class Vehicles.

119.   Plaintiffs Oken, Wozniak, Grossman and the Oregon Class are thus entitled to all available damages and other relief, including without limitation

disgorgement of all unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiffs Oken and the Oregon Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class Members, pray for a judgment:

a.     Determining that this action is a proper class action and certifying the California Class and the Oregon Class, as defined herein;

b.     Appointing Plaintiffs as Class Representatives;

c.     Appointing the undersigned as Class Counsel;

d.     Finding Defendants liable to Plaintiffs and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e.     Awarding statutory damages as appropriate;

f.     Awarding disgorgement of gross profits and all other forms of equitable monetary relief;

g.     Awarding punitive damages based on Defendants' malicious, oppressive, fraudulent, wanton and reckless behavior;

h.     Awarding pre- and post-judgment interest;

i.     Awarding injunctive relief, as claimed herein or as the Court may deem proper;

j.     Awarding Plaintiffs and Class Members attorney fees and all litigation costs;

k.     Awarding Plaintiffs and Class Members such other relief as may be just and proper;

l.     Awarding compensatory damages against Defendants in favor of Plaintiffs and the Class for damages sustained as a result of Defendants' wrongdoing; and

m.     Awarding such other and further relief as may be just and proper.

1

## **DEMAND FOR JURY TRIAL**

2   Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4   DATED: September 23, 2025          Respectfully submitted,

5
                                                */s/ Christopher R. Rodriguez*
6                                               CHRISTOPHER R. RODRIGUEZ (SB#
                                                212274)
7                                               crodriguez@singletonschreiber.com
                                                ANDREW D. BLUTH (SB# 232387)
8                                               abluth@singletonschreiber.com
                                                JOHN R. TERNIEDEN (SB# 330343)
9                                               jternieden@singletonschreiber.com
                                                **SINGLETON SCHREIBER, LLP**
10                                              1414 K Street, Suite 470
                                                Sacramento, California 95814
11                                              Telephone: (916) 248-8478
                                                Facsimile: (619) 255-1515
12

13
                                                Additional Counsel For *Plaintiffs*:
14
                                                DAVID GREIFINGER, (SB# 105242)
15                                              tracklaw@me.com
                                                **LAW OFFICES OF DAVID R.**
16                                              **GREIFINGER**
                                                1515 Sunset Blvd., No. 214
17                                              Pacific Palisades, California 90272
                                                Telephone: (434) 330-0193
18                                              Facsimile: (831) 920-4864

19                                              HOWARD A. GOLDSTEIN, (SB# 166005)
                                                howard@hgoldstein.attorney
20                                              **LAW OFFICES OF HOWARD A.**
                                                **GOLDSTEIN**
21                                              13701 Riverside Drive, Suite 700
                                                Sherman Oaks, CA 91423
22                                              Telephone: (818) 981-1010
                                                Facsimile: (818) 981-1311
23

24

25

26

27

28

CLASS ACTION COMPLAINT