CHRISTOPHER R. RODRIGUEZ (SB# 212274)
*crodriguez@singletonschreiber.com*
ANDREW D. BLUTH (SB# 232387)
*abluth@singletonschreiber.com*
JOHN R. TERNIEDEN (SB# 330343)
*jternieden@singletonschreiber.com*
**SINGLETON SCHREIBER, LLP**
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

DAVID GREIFINGER, (SB# 105242)
*tracklaw@me.com*
**LAW OFFICES OF DAVID R. GREIFINGER**
14016 Bora Bora Way, No. 208
Marina del Rey, CA 90292
Telephone: (310) 437-0728
Facsimile: (831) 920-4864

*Attorneys for Plaintiffs and the Putative Class*

*(Additional Counsel Listed on the Signature Page.)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE PROUDFOOT, an individual; PAUL MERRITT, an individual; ALEXIS MURRAY-FORBES, an individual; and JENNIFER HOGAN, an individual; LAURA GOLDBERGER, an individual; and JONA ANDREWS-STOCKER, an individual, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>  Defendants. | Case No. 2:25-cv-09115-JFW-PVC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

SECOND AMENDED CLASS ACTION COMPLAINT

**CLASS ACTION COMPLAINT**

Plaintiffs GRACE PROUDFOOT, PAUL MERRITT, ALEXIS MURRAY-FORBES, JENNIFER HOGAN, LAURA GOLDBERGER, and JONA ANDREWS-STOCKER ("Plaintiffs"), by and through their undersigned counsel, on their own behalf and on behalf of all other persons similarly situated, sue NISSAN NORTH AMERICA, INC. ("Nissan") and Does 1 through 100 ("Doe Defendants") (Nissan and Doe Defendants are collectively referred to herein as the "Defendants") and for this Complaint, allege upon information and belief, and based on the investigation to date of their counsel, as follows:

**INTRODUCTION**

1. The Nissan Leaf is an electric car designed and manufactured by Nissan Japan and marketed, distributed, sold, warranted and serviced by Nissan. As further alleged below, Defendants made materially misleading representations and omissions regarding the Nissan Leaf's charging capabilities. Defendants also failed to disclose and/or omitted any notice of a uniform design defect in the Nissan Leaf's charging system that eliminates (or at least significantly compromises) the Level 3 fast-charging capabilities of Nissan Leaf vehicles.

2. Specifically, the 2019 through 2022 Nissan Leaf models suffer from a significant defect that causes a substantial fire risk during Level 3 fast charging. The issue stems from the potential for the high-voltage battery to overheat during fast charging, which can lead to a fire. Nissan confirmed that certain Nissan Leaf models have excessive lithium deposits in their battery cells that are a likely contributing cause of this issue. Nissan knew or should have known about this dangerous defect in the vehicles at issue before the widespread marketing and sale/lease of the vehicles.

3. In or about October 2024, and on a continuing basis thereafter, Nissan sent owners/lessors of affected vehicles, including Plaintiffs, a notice regarding the fast charge issue for the 2019-2020 Nissan Leaf.  This was titled an "Interim Owner Letter" and instructed owners not to use Level 3 (DC) fast chargers until the recall

remedy was completed.  This notice left these affected individuals, including Plaintiffs, with no way to quickly charge their vehicles, thus greatly reducing the effective range and utility of their vehicles.

4.      Plaintiffs are informed and believe, and thereon allege, that there have been two recalls for the 2019 to 2022 Nissan Leafs related to DC Level 3 fast charging, which affects approximately 44,781 vehicles across the United States. The first recall (24V-700) in late 2024 covered about 25,704 Nissan Leaf vehicles from the 2019-2020 model years.  The second recall (25V655) in October 2025 added an estimated 19,077 Nissan Leafs from the 2021-2022 model years. Both recalls stem from a risk of fire due to potential battery overheating, likely from excessive lithium deposits during fast charging.  Plaintiffs are informed and believe, based on the total number of U.S. sales and the estimated percentage of sales that occurred in California, that approximately 14,000 Nissan Leaf vehicles with model years between 2019 to 2022 were sold new in California.

5.      To remedy Defendants' misconduct, Plaintiffs bring this action pursuant to applicable consumer protection statutes, on behalf of themselves and all current owners or lessees in California of 2019 to 2022 Nissan Leaf vehicles with a quick charging port (collectively, "Class Vehicles"). Plaintiffs seek appropriate damages, civil penalties, and/or restitution, as well as an order compelling Nissan, among other things, to (1) remove and replace Plaintiffs' and class members' charging systems with a suitable alternative product for the Nissan Leaf that does not contain the defects alleged herein; and/or (2) compelling Nissan to reform its Nissan Leaf charging and battery warranty, in a manner deemed to be appropriate by the Court, to cover the loss of charging and battery functionality under warranty as alleged herein and to notify all class members that such warranty has been reformed.

6.      The Nissan Leaf is an electric vehicle propelled by an electric motor and powered by a rechargeable lithium-ion battery pack. Instead of adding gasoline or diesel fuel to a gas tank, Nissan Leaf owners are supposed to be able to charge their

vehicles at Level 3 charging stations or using at-home chargers. The use of Level 3 charging stations is advertised as a way to quickly replenish the charge on Nissan Leaf vehicles, which makes it possible for the completion of longer trips without having to wait hours for a full re-charge.

7. However, as a result of defective charging systems in the Class Vehicles, Plaintiffs and all class members have been wrongfully deprived of the ability to use Level 3 charging, thus depriving them of a significant component of the value of the Class Vehicles.

8. By making false, fraudulent, and/or misleading statements to consumers, Defendants made substantial profits and deceived thousands of consumers, including Plaintiffs, who purchased or leased the Class Vehicles under the false belief that they could quickly charge their vehicles at Level 3 fast charging stations.

9. Consumers have been misled, induced, and defrauded into spending money and thus harmed by Defendants' fraudulent misrepresentations, false advertising, and unfair, unlawful and fraudulent business practices.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act because the aggregated claims of the class members, which class consists of at least 100 proposed plaintiffs, exceed the sum or value of $5,000,000, exclusive of interest and costs, and at least one Class Member (defined below) is a citizen of a state different from Defendants.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) the Nissan entities are actively doing business in California and have created and continuously serve a market for Nissan Leafs in California and are therefore subject to personal jurisdiction throughout California; (ii) Defendants transact business in California and in the District based on sales of Nissan vehicles to residents of the District; and (iii) upon information and belief Defendants have committed unlawful

SECOND AMENDED CLASS ACTION COMPLAINT

acts in the District by and through their sales and/or marketing practices within the District.

## PARTIES

12.     Plaintiff GRACE PROUDFOOT is a citizen of the State of California and a resident of San Luis Obispo County.  Plaintiff Proudfoot relied upon the representations of Defendants (and or their failure to disclose material facts) concerning the Nissan Leaf's Level 3 charging capabilities that make longer drives possible, which were a material factor in her decision to purchase a Class Vehicle— a 2019 Nissan Leaf Plus. Ms. Proudfoot purchased her vehicle in Oregon on or about July 3, 2023, primarily for her own personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle. Ms. Proudfoot moved to California in or about August 2025, where she has suffered damages as more fully alleged herein, including by being limited in the way she is able to use her vehicle given Nissan's directive not to use the vehicle's Level 3 charging capabilities

13.     Plaintiff PAUL MERRITT is a citizen of the State of California and a resident of San Diego County.  Plaintiff Merritt relied upon the representations of Defendants (and or their failure to disclose material facts) concerning the Nissan Leaf's Level 3 charging capabilities that make longer drives possible, which were a material factor in his decision to purchase a Class Vehicle—a 2020 Nissan Leaf SV Plus. Mr. Merritt purchased his vehicle in California in 2023, primarily for his own personal, family, or household use.  Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

14.     Plaintiff ALEXIS MURRAY-FORBES is a citizen of the State of California and a resident of Alameda County.  Plaintiff Murray-Forbes relied upon the representations of Defendants (and or their failure to disclose material facts) concerning the Nissan Leaf's Level 3 charging capabilities that make longer drives possible, which were a material factor in her decision to purchase a Class Vehicle—

5

SECOND AMENDED CLASS ACTION COMPLAINT

a 2019 Nissan Leaf SV Plus. Ms. Murray-Forbes purchased her vehicle in California in 2021, primarily for her own personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

15. Plaintiff JENNIFER HOGAN is a citizen of the State of California and a resident of Santa Cruz County. Plaintiff Hogan relied upon the representations of Defendants (and or their failure to disclose material facts) concerning the Nissan Leaf's Level 3 charging capabilities that make longer drives possible, which were a material factor in her decision to purchase a Class Vehicle—a 2019 Nissan Leaf SV. Ms. Hogan purchased her vehicle in California in 2022, primarily for her own personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

16. Plaintiff LAURA GOLDBERGER is a citizen of the State of California and a resident of Alameda County. Plaintiff Goldberger relied upon the representations of Defendants (and or their failure to disclose material facts) concerning the Nissan Leaf's Level 3 charging capabilities that make longer drives possible, which were a material factor in her decision to purchase a Class Vehicle— a 2019 Nissan Leaf. Ms. Goldberger purchased her vehicle in California in 2019, primarily for her own personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

17. Plaintiff JONA ANDREWS-STOCKER is a citizen of the State of California and a resident of Los Angeles County. Plaintiff Andrews-Stocker relied upon the representations of Defendants (and or their failure to disclose material facts) concerning the Nissan Leaf's Level 3 charging capabilities that make longer drives possible, which were a material factor in her decision to purchase a Class Vehicle— a 2022 Nissan Leaf. Ms. Andrews-Stocker purchased her vehicle in California in 2022, primarily for her own personal, family, or household use. Nissan manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

18. Defendant Nissan is an automobile design, manufacturing, distribution,

6

and/or servicing corporation doing business in all 50 states. Defendants design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including Class Vehicles, nationwide. Defendant Nissan is incorporated in Delaware with its principal place of business in Tennessee. Defendant Nissan has systematically served and cultivated a market specifically for the Leaf, as well as for many other Nissan vehicles, in California by advertising, selling cars, providing repairs and service, and distributing replacement parts to its dealers and auto-shops in California. On information and belief, money received from the purchase of a Nissan vehicles (including the Class Vehicles) or parts from a dealership flows, at least in part, from the dealer to Nissan.

19.    The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of the Doe Defendants, inclusive, and each of them, are unknown to Plaintiffs at this time, who therefore sues such Doe Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a Doe Defendant caused injuries and damages proximately thereby to Plaintiffs as hereafter alleged, and that each Doe Defendant is liable to Plaintiffs for the acts and omissions alleged herein below, and the resulting injuries to Plaintiffs, and damages sustained by Plaintiffs. Plaintiffs will amend this Complaint to allege the true names and capacities of said Doe Defendants when the same are ascertained.

## FACTS COMMON TO ALL CLASS MEMBERS

20.    Nissan is one of the largest automobile manufacturers in the world and sells its vehicles and associated services to consumers across the United States—including California.

21.    The Nissan Leaf was the first mass produced electric car and is one of the most affordable electric vehicles (EV) on the market. Given the vehicle's affordability, it has seen significant sales since its debut in 2010. According to Nissan's own sales data, between 2019 and 2022 alone, Nissan sold approximately

48,295 Nissan Leaf vehicles (the Class Vehicles) in the USA. And while the definitive number of Class Vehicles sold in California from 2019 to 2022 is not publicly available, the Class Vehicles were the number five best-selling electric vehicle in California in 2019.  By 2022, the Class Vehicle was still in the top 10 best-selling electric vehicles sold in California.[1]

22.    However, the Nissan Leaf has been plagued with battery and charging issues since inception. This is, in part, because unlike many EVs on the market, the Nissan Leaf did not include an active thermal management system to maintain the battery's temperature at an ideal level. This can create problems for the battery's health, charging speeds, and range, particularly in very cold or hot weather. The lack of a thermal management system can also cause the battery to overheat, with potentially dangerous consequences.

23.    Plaintiffs are informed and believe, and thereon allege, that prior to marketing and selling these Class Vehicles, Nissan thoroughly tested the vehicles and was aware of the consequences of failing to include a thermal management system. Indeed, Nissan was subject to a prior litigation for its 2011-2012 model Leafs based on issues arising from the lack of a thermal management system for the EVs battery. Thus, based on information already in its possession and/or through its pre-marketing testing process, Nissan learned—or at a minimum should have learned—that the Class Vehicles suffered from a dangerous defect that can cause the lithium-ion batteries in the vehicles to overheat during fast charging sessions.

24.    Despite knowing about this dangerous defect in the Class Vehicles, Nissan proceeded to market and sell the Class Vehicles to the public without

---

[1] Plaintiffs have searched but have not yet located a verifiable record of the specific number of Nissan Leaf vehicles sold in California.  But iSeeCars.com has reported that Nissan Leaf vehicles comprise 21.8% (in California) of all used vehicles sold between 2019 and 2020.  Plaintiffs are informed and believe, and thereon allege, that the Clean Vehicle Rebate Project (CVRP), was a California program that offered rebates for purchasing or leasing new electric vehicles and CVRP website indicates that 2,643 Californians applied a rebate for the 2019 through 2022 Nissan Leaf model years.  Based on the foregoing, the nearly 50,000 vehicles sold between 2019 and 2022 in the United States, and the more than 44,781 vehicles subject to the recalls described in paragraph 4 herein, Plaintiffs believe, and thereon allege, that the number of class members greatly exceeds the jurisdictional minimum of 100.

SECOND AMENDED CLASS ACTION COMPLAINT

informing consumers about the defect in the charging system. To the contrary, Nissan falsely advertised that the Class Vehicles were designed so that they could be quickly charged at Level 3 charging stations so that drivers could complete long drives without having to wait hours to re-charge the battery. Nissan's advertisements for the Leaf touted its ability to "Charge in a flash" by utilizing "tens of thousands" of public Level 3 charging stations to obtain an 80% battery charge in 40-60 minutes.

25. Over time, the individuals that purchased the Class Vehicles began to discover the defectiveness of the charging system. Some owners experienced battery fires as a result of the defective condition of the Class Vehicles. Others began to experience other related problems, such as slowed charging speeds designed to prevent the battery from overheating and catching fire. As owners of the Class Vehicles experienced and reported these problems, the true nature and extent of the defects eventually came to light.

26. The documented fires in the Class Vehicles do not appear to be the result of external abuse. Virtually all have resulted from an internal failure while the cars are parked and charging. Given the risk of a single cell failure that may occur because of a cell defect, good engineering design should limit the thermal runaway propagation to adjacent cells. Catastrophic failure occurs when multiple cells become engaged in thermal runaway. It has been estimated that thermal runaway has caused as many as 80% of lithium-ion battery fires. These facts make it overwhelmingly likely that the fire risk Nissan acknowledges to exist in the Class Vehicles is the result of defectively designed, manufactured, and/or installed batteries. The use of better safety systems and more rigorous testing would have prevented the fires in certain owners' vehicles and the significant cost and inconvenience now visited upon all owners and lessees of the Class Vehicles.

27. On information and belief, any number of combinations of standard safety protocols, in combination with effective safety testing, would have rendered the Class Vehicles safe and fit for their intended purpose of operating as electric

9

SECOND AMENDED CLASS ACTION COMPLAINT

vehicles. On information and belief, Nissan instead skimped on available protection measures in order to tout the quick charging capabilities and battery range of the Class Vehicles—all to the benefit of Nissan's bottom line and to the detriment of owners and lessees of the Class Vehicles.

28.   In 2024, Nissan advised owners of the Class Vehicles to avoid Level 3 fast charging until a "software fix" was implemented. Over a full year later, Nissan has not provided any such fix.  Even worse, Nissan has at all times known that the defect at issue is not something that can be remedied by a "software fix."

29.   Plaintiffs further allege that replacing the battery pack on a 2019 to 2022 Nissan Leaf typically costs between $8,000 to $16,000 for the pack itself, plus labor, which can add several hundred to over a thousand dollars. The total cost will depend on the specific battery size ($6,500-$7,500 for 40 kWh and $8,500-$9,500 for 62 kWh), and any additional labor fees. An expected total price to correct the defect could be between $9,000 and $17,000 per vehicle.[2]

30.   Consumers who purchased Leaf vehicles are now left with an unreliable and potentially dangerous vehicle. The real-world impacts of this are significant, particularly in a state like California, where cars are a necessary form of transportation. Consumers rely on their cars for daily necessities, such as transportation to and from work, the grocery store, or medical appointments.

31.   Consumers also rely on having ready access to their vehicles in times of emergency. The Leaf is fully electric, meaning that the car is undrivable without a charge. Drivers of the Leaf are now faced with the real possibility that they would not be able to use their vehicle in an emergency because the car would take hours to fully charge or would only afford them a short-distance trip on a lesser charge.

32.   Recently, Nissan announced that the next generation of Nissan Leafs will be equipped with a liquid cooling pack to maintain the battery's temperature.

---

[2] Based on the foregoing cost estimates, and the number of vehicles impacted by the recalls, Plaintiffs are informed and believe, and thereon allege, that the aggregated claims of the class members greatly exceeds the sum or value of $5,000,000.

10

SECOND AMENDED CLASS ACTION COMPLAINT

This fix, however, is forward looking and does nothing to help the thousands of Californians who are unable to use Level 3 charging on their Leaf vehicles.

33.   As a result of Nissan's unlawful and fraudulent conduct, tens of thousands of Class Vehicle owners have been deprived of the full value of the vehicles that they purchased based on Nissan's misrepresentations and non-disclosures. Among other things, owners of Class Vehicles are unable to take long trips and experience significant loss of value when they trade-in and/or re-sell their Class Vehicles.

**PLAINTIFFS' INDIVIDUAL ALLEGATIONS**

34.   On or about July 3, 2023, Plaintiff Grace Proudfoot purchased her 2019 Nissan Leaf Plus. At the time she purchased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations. This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs and thus take several hours to achieve a full charge.

35.   In or about October 2024, Plaintiff Proudfoot received a notice from Nissan advising her about the defective charging/battery system and directing her to avoid Level 3 fast charging until a "software fix" was implemented. More than a full year later, Nissan has not provided any such fix.

36.   When Ms. Proudfoot moved from Oregon to California in 2025 she had to pay to have her Nissan Leaf Plus vehicle shipped to California because her inability to safely utilize Level 3 charging made driving impractical. Ms. Proudfoot was forced to resort to other means of transporting herself and her possessions.

37.   Once Ms. Proudfoot began living in California, her movements and plans were restricted by the inability to use Level 3 charging. Ms. Proudfoot has also

11

SECOND AMENDED CLASS ACTION COMPLAINT

had to either forgo or arrange alternative transportation for many day trips. If she used her Nisan Leaf Plus for these trips, the charging time would greatly extend the length of the trip—sometimes making a simple day trip an overnight endeavor.

38.     The inability to use Level 3 charging also causes Ms. Proudfoot constant anxiety that she will be trapped in an emergency. Not having Level 3 charging means that she is inevitably stuck with 'less than a half tank' and would not be able to go far at a moments notice.  The inability to quickly obtain a full charge can obviously present consumers like Ms. Proudfoot with significant difficulties in an actual emergency.

39.     In or about 2023, Plaintiff Paul Merritt purchased his 2020 Nissan Leaf SV Plus.  At the time he purchased the vehicle, he believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations. This belief was of critical importance because he believed that, if he was on a long drive or in any other situation where she need to achieve a full charge quickly, he could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations that take several hours to achieve a full charge.

40.     In or about October 2024, Plaintiff Merritt received a notice from Nissan advising him about the defective charging/battery system and directing him to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

41.     In or about 2021, Plaintiff Alexis Murray-Forbes leased her 2019 Nissan Leaf SV Plus.  At the time she leased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations.  This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station,

12

SECOND AMENDED CLASS ACTION COMPLAINT

which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs and thus take several hours to achieve a full charge.

42. In or about October 2024, Plaintiff Murray-Forbes received a notice from Nissan advising her about the defective charging/battery system and directing her to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

43. In or about 2022, Plaintiff Jennifer Hogan purchased her 2019 Nissan Leaf SV Plus. At the time she purchased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations. This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs and thus take several hours to achieve a full charge.

44. In or about October 2024, Plaintiff Hogan received a notice from Nissan advising her about the defective charging/battery system and directing her to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

45. In or about 2019, Plaintiff Laura Goldberger purchased her 2019 Nissan Leaf. At the time she purchased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations. This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs

13

SECOND AMENDED CLASS ACTION COMPLAINT

and thus take several hours to achieve a full charge.

46.    In or about October 2024, Plaintiff Goldberger received a notice from Nissan advising her about the defective charging/battery system and directing her to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

47.    On or about July 21, 2022, Plaintiff Jona Andrews-Stocker purchased her 2019 Nissan Leaf.  At the time she purchased the vehicle, she believed—like all other class members—that the vehicle could be charged in a variety of manners, including at Level 1, Level 2, and Level 3 charging stations.  This belief was of critical importance because she believed that, if she was on a long drive or in any other situation where she need to achieve a full charge quickly, she could utilize a Level 3 charging station, which would fully charge the vehicle's battery in approximately one hour or less, as opposed to Level 1 or Level 2 charging stations, which have lower power outputs and thus take several hours to achieve a full charge.

48.    In or about October 2024, Plaintiff Andrews-Stocker received a notice from Nissan advising her about the defective charging/battery system and directing her to avoid Level 3 fast charging until a "software fix" was implemented. Almost a full year later, Nissan has not provided any such fix.

49.    The safety and reliability of the Class Vehicles and their batteries was material to Plaintiffs' and class members' decisions to purchase their Class Vehicles, as any consumer would reasonably expect to be able to use the Level 3 charging (and to not be exposed to the risk of a fire) when purchasing their vehicles.  The availability and utility of the Level 3 quick charging was also material to Plaintiffs' and the class members' decisions to purchase their Class Vehicles. The inability to use Level 3 quick charging significantly affects their ability to use their vehicles and has significantly diminished the value and marketability of those vehicles.  Had Plaintiffs and the class members known of the defective nature of the Class Vehicles, they either would not have purchased or leased those vehicles or would have paid

14

SECOND AMENDED CLASS ACTION COMPLAINT

substantially less for them.  Plaintiffs and the class members have thus suffered economic harm and Nissan has been unjustly enriched.

50.    Nissan has offered no remedy for the defective Class Vehicles and no reimbursement to Class Vehicle owners and lessees for out-of-pocket expenses, loss of use, and loss of value.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

51.    Because Nissan concealed the existence of the risk of spontaneous fire, Plaintiffs and the class members had no way of knowing about the unreasonable fire risk of the Class Vehicles until Nissan informed them of the Defect through the above-described recall notices.

52.    Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered through the exercise of reasonable diligence that Nissan was concealing the conduct and/or conditions complained of herein.

53.    Plaintiffs and the other class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Nissan did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Nissan had concealed information about the unreasonable fire risk of the Class Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.

54.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

### B.    Fraudulent Concealment Tolling

55.    All applicable statutes of limitation have also been tolled by Nissan's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

15
SECOND AMENDED CLASS ACTION COMPLAINT

## C. Estoppel

56. Nissan was under a continuous duty to disclose to Plaintiffs and the other class members the true character, quality, and nature of the fire risk of the Class Vehicles.

57. Nissan knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the fire risk of the Class Vehicles.

58. Based on the foregoing, Nissan is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

59. Pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3), or alternatively (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all other similarly situated consumers as members of the following class:

a. **California Class**: During the fullest period allowed by law, all California citizens who bought or leased a Class Vehicle at any time (the "Class"). The members of the Class are collectively referred to herein as "Class Members."

b. Excluded from the Class are any Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

60. Plaintiffs and Class Members bring this action pursuant to FRCP Rule 23(a) and (b)(3), on behalf of themselves and all other persons similarly situated for the direct, proximate, and foreseeable injuries caused by Defendants' representations and/or omissions concerning the defective charging system in the Class Vehicles.

61. The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class. The members of the proposed Class are so numerous that individual joinder of all their members is impracticable because Class Members number in the

16

SECOND AMENDED CLASS ACTION COMPLAINT

tens of thousands. The precise number of Class Members and their identities are unknown to Plaintiffs at this time but are objectively ascertainable and will be determined through appropriate discovery.

62. Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies Class Members.

63. Class Members may be notified of the pendency of this action by mail, publication, and/or through the records of Defendants and third-party retailers and vendors.

64. Like Plaintiffs, all Class Members purchased the Class Vehicles with the belief, caused by their reliance on Defendants' representations and/or omissions, that the Class Vehicles could be used and operated safely as advertised, with full Level 3 fast charging capabilities. Such understanding was reasonable and was a material basis for the decision to purchase the Class Vehicles, which Defendants intended to foster through their various marketing activities in connection with the sale of the Class Vehicles. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

65. There are common questions of law and fact affecting Plaintiffs and Class Members which predominate over any question affecting only individual members. The answers to these common questions will advance resolution of litigation as to all Class Members. These common legal and factual issues include but are not limited to:

a. Whether Defendants marketed and advertised the Class Vehicles in a way that is false, deceptive, and/or misleading.

b. Whether by the misconduct set forth in this complaint, Defendants engaged and continue to engage in unfair, fraudulent, or unlawful

17

SECOND AMENDED CLASS ACTION COMPLAINT

business practices;

       c.     Whether Defendants' conduct was committed knowingly and/or intentionally;

       d.     Whether Defendants' conduct constitutes violations of the federal and/or state laws asserted herein;

       e.     Whether and when Defendants had a duty to correct their fraudulent statements;

       f.     Whether Class Members were harmed by Defendants' false statements;

       g.     Whether Defendants were unjustly enriched by their conduct;

       h.     Whether Defendants' conduct violates public policy;

       i.     Whether Class Members are entitled to punitive damages;

       j.     Whether the Class Members are entitled to recover statutory attorney's fees; and

       k.     Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

66.    Plaintiffs' claims are typical of the claims of the proposed Class because Plaintiffs and Class Members were harmed in the same manner by the same conduct, all of which was intended by Defendants.

67.    Plaintiffs and Class Members have all sustained economic injury arising out of Defendants' violations of common and statutory law alleged herein.

68.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs intend to prosecute these claims vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class Members, nor are Plaintiffs subject to any unique defenses.

69.    Plaintiffs' interests do not conflict with the interests of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in

SECOND AMENDED CLASS ACTION COMPLAINT

prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously.

70.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.

71.    Given the small relative amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

72.    Individual Class Members will not wish to undertake the burden and expense of individual cases.

73.    In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system.  Individualized ligation also presents the potential for inconsistent or contradictory judgments.

74.    In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

75.    Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members.  Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

76.    In each case, Class Members believed, based on Defendants representation about the Nissan Leaf, that they would be able to use and enjoy the benefits of Level 3 charging for their Nissan Leaf vehicle.  For over a year, however, Level 3 charging has been unavailable due to a safety risk.  This has caused and continues to cause harm to all Class Members. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

77.    Proposed class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class Members.

78.    In addition to, or in the alternative to the above, this case is properly maintained as a class action under Rule 23(b)(2) because Defendants have acted or

19

refused to act on grounds that apply generally to the Class Members as a whole, such that final equitable relief is appropriate regarding the Class as a whole.

79. Defendants have acted and/or refused to act on grounds applicable generally to the Class Members as a whole. Defendants made representations and/or omissions regarding the Level 3 charging capabilities of the Nissan Leaf to Plaintiffs and Class Members, which they knew or should have known were false, deceptive and/or misleading.

80. Plaintiffs and Class Members have been injured and continue to be injured by Defendants' acts and/or omissions. Therefore, Plaintiffs and Class Members seek injunctive relief or corresponding declaratory relief with respect to the class as a whole.

81. In the alternative, this case is properly maintained as a class action with respect to the following issues under FRCP 23 (c)(4):

a. The liability of Defendants under Plaintiffs' and Class Members' claims for relief resulting from Defendants representations and/or omissions, designed by Defendants and employed to all relevant consumers on a nationwide basis, and made to Plaintiffs and Class Members concerning the Class Vehicles' charging systems;

b. Whether Defendants owed a duty of care to Plaintiffs and the Class Members;

c. Whether Defendants knew or should have known that representations and/or omissions made concerning their Class Vehicles were false, deceptive and/or misleading;

d. Whether Defendants wrongfully represented, and continue to misrepresent, the capabilities and characteristics of the Class Vehicles;

e. Whether Defendants' representations and/or omissions are true, or are misleading, or objectively reasonably likely to deceive;

SECOND AMENDED CLASS ACTION COMPLAINT

f.      Whether Defendants' representations and/or omissions with respect to their Class Vehicles were false, deceptive, and misleading;

g.      Whether Defendants' representations and/or omissions caused Plaintiffs and Class Members to suffer harm; and

h.      Whether Defendants knew or should have known that its representations and/or omissions would cause Plaintiffs and Class Members to suffer harm.

## COUNT I

### (Unjust Enrichment)

### (Against Defendants On Behalf of All Class Members)

82.     Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

83.     At all relevant times, Defendants marketed, advertised, and sold/leased the Class Vehicles to Plaintiffs and Class Members.

84.     The Class Vehicles purchased or leased by Plaintiffs and Class Members did not provide the promised performance.

85.     Plaintiffs and Class Members conferred a benefit on Defendants in the form of monies that were paid in exchange for the Class Vehicles.

86.     Defendants were aware and had knowledge of these non-gratuitous benefits, and, in fact, intended for this to occur as a result of their marketing and sales practices that they knew were misleading.

87.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Class Vehicles, which retention under these circumstances is unjust and inequitable because Defendants misrepresented and/or omitted material facts concerning the Class Vehicles.

88.     Defendants' misrepresentations and/or omissions caused injuries to Plaintiffs and Class Members because no reasonable consumer would have purchased or leased the Class Vehicles if Defendants were honest about the value

SECOND AMENDED CLASS ACTION COMPLAINT

and the true facts regarding the Class Vehicles were known.

89. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court. Plaintiffs and Class Members lack an adequate remedy at law and are thus entitled to such relief.

## COUNT II

### (Fraud)

### (Against Defendants On Behalf of All Class Members)

90. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above, which detail fraud with specificity.

91. Defendants made affirmative false and misleading statements.

92. Alternatively, Defendants fraudulently omitted and concealed material facts.

93. Defendants had knowledge of the falsity of the facts in their misleading statements and/or omissions and/or concealments.

94. Plaintiffs and Class Members had no means available to determine the falsity of the statements or to discover the omissions and concealment.

95. Defendants intended for Plaintiffs and Class Members to rely upon their statements, omissions, and concealment.

96. Plaintiffs and Class Members materially relied upon the statements, omissions, and concealment by purchasing or leasing the Class Vehicles, which no reasonable consumer would have purchased or leased if Defendants were honest about the value and the true facts regarding the Class Vehicles were known.

97. The reliance of Plaintiffs and Class Members was justifiable and reasonable.

98. Plaintiffs and Class Members lacked knowledge that the statements were false.

SECOND AMENDED CLASS ACTION COMPLAINT

99.     As a direct and proximate result of Defendants' misleading statements and/or omissions, Plaintiffs and Class Members were damaged.

100.    Defendants' actions intentionally harmed Plaintiffs and the other Class Members without just cause, and as such were evil, wanton, reckless, and intentional, and made with deliberate and flagrant disregard for consumers, so as to justify the imposition of punitive damages to punish Defendants and to deter Defendants and others from engaging in similar conduct in the future.

## COUNT III

### (Negligent Misrepresentation)

### (Against Defendants On Behalf of All Class Members)

101.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above, which detail Defendants' negligent misrepresentations with specificity.

102.    Through their advertising and course of their regular business, Defendants made representations and/or omissions to Plaintiffs and Class Members of material facts concerning the Class Vehicles.

103.    Defendants owed Plaintiffs and Class Members a duty to provide the Class Vehicles according to Defendants' representations.

104.    Defendants breached their duty owed to Plaintiffs and Class Members by failing to provide the Class Vehicles according to their representations.

105.    Defendants failed to act with reasonable care in making the above-mentioned representations and/or omissions concerning their Class Vehicles. Defendants made the above-mentioned representations and/or omissions concerning their Class Vehicles without reasonable grounds for believing them to be true.

106.    Defendants made the above-mentioned representations and/or omissions with the intent to induce Plaintiffs and Class Members into purchasing or leasing the Class Vehicles.

107.    Defendants knew or should have known that Plaintiffs and the Class

Members were ignorant as to the true characteristics, capabilities, and value of the Class Vehicles and that Plaintiffs and Class Members would reasonably rely upon Defendants' representations and/or omissions.

108. Plaintiffs and Class Members did justifiably and reasonably rely on Defendants' representations and omissions. Plaintiffs and Class Members would not have purchased or leased the Class Vehicles without such statements and/or omissions made by Defendants.

109. As a result of Defendants' acts and/omissions, Plaintiffs and Class Members were damaged and harmed by Defendants in that they have been deprived of their benefit of the bargain and loss monies they overspent on the Class Vehicles.

## COUNT IV

### (Violation of California's Consumer Legal Remedies Act, Cal. Civil Code § 1750, et seq.)

### (Against Defendants On Behalf of All Class Members)

110. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class.

112. Defendants are "persons" as defined by California Civil Code § 176l(c).

113. Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased or leased their Class Vehicles for personal, family or household use.

114. By failing to disclose and concealing the defective nature of the charging systems from Plaintiffs and prospective Class Members, Defendants violated California Civil Code § l770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles and their charging systems were of a particular standard, quality, or grade when they were of another. See Cal. Civ. Code §§ 1770(a)(5) and (7).

115. Defendants violated section 1770(a)(9) of the CLRA by advertising the vehicles with the intent not to sell or lease the vehicles as advertised.

116. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

117. Defendants knew that the Class Vehicles and their charging systems suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

118. Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the charging systems because: (a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' charging systems; (b) Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their charging systems had a dangerous safety defect until manifestation or failure; and (c) Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety defect.

119. In failing to disclose the defective nature of the Class Vehicles and their charging systems, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

120. In representing that their vehicles safely could be charged at Level 3 charging stations without disclosing dangerous defects prevented the safe use of such charging stations, Defendants knowingly and intentionally affirmatively misrepresented material facts to Plaintiffs and Class Members and breached their duty not to do so.

121. The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would consider them important in deciding whether to purchase or lease a Class Vehicles or pay a lesser price. Had Plaintiffs and other Class Members known that the Class Vehicles could

SECOND AMENDED CLASS ACTION COMPLAINT

not safely utilize the Level 3 fast-charging feature due to the undisclosed management defect, they would not have purchased the Class Vehicles or would have paid less for them.

122. Plaintiffs relied on Defendants' misrepresentations and omissions. Plaintiffs and the Class Members are reasonable consumers who do not expect their vehicles to be unsuitable for Level 3 fast charging. This is the reasonable and objective consumer expectation relating to electric vehicles.

123. As a result of Defendants' conduct, Plaintiffs and the Class Members have been harmed and have suffered actual damages in that the Class Vehicles cannot safely engage in fast charging at Level 3 charging stations due to the defect herein alleged.

124. As a result of Defendants' conduct, Plaintiffs and the Class Members were harmed and suffered actual damages as a result of Defendants' misrepresentations and omissions with regard to vehicle range and charging times in that they purchased or leased vehicles which do not perform as advertised.

125. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

126. Plaintiffs and the Class lack an adequate remedy at law and are thus entitled to equitable relief.  Injunctive relief is necessary to prohibit Defendants from continuing to engage in the unlawful practices alleged herein.

## COUNT V

### (Violation of California Business & Professions Code section 17200)

### (Against Defendants On Behalf of All Class Members)

127. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

128. By engaging in the above-described conduct, Defendants acted in a manner that is fraudulent, unlawful, and unfair, and have thus engaged in unfair and

26

unlawful business practices to the extreme detriment of Plaintiffs and the Class, which conduct is prohibited under California Business & Professions Code §§ 17200, et seq.

129. Defendants' fraudulent, unlawful, and unfair conduct has allowed Defendants to enrich themselves at the expense of Plaintiffs and the Class, including through Plaintiffs' and Class Members' payment of monies to Defendants, including without limitation through the purchase or lease of the Class Vehicles.

130. Plaintiffs and the Class are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiffs and the Class. Plaintiffs and the Class lack an adequate remedy at law and are thus entitled to equitable relief. Injunctive relief is necessary to prohibit Defendants from continuing to engage in the unlawful practices alleged herein.

## COUNT VI
### (Violation of California Business & Professions Code section 17500)
### (Against Defendants On Behalf of All Class Members)

131. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

132. Defendants marketing materials and statements concerning the Class Vehicles are commercial advertisements that Defendants intended to disseminate across the United States and California.

133. By engaging in the above-described conduct, Defendants made false statements in commercial advertisements directed at the public, and have thus engaged in unlawful false or misleading advertising under California Business & Professions Code §§ 17500, et seq.

134. Defendants' false statements in their commercial advertisements deceived or had the tendency to deceive a substantial segment of their audience and the Class.

27
SECOND AMENDED CLASS ACTION COMPLAINT

135.    Defendants' deception through their commercial advertisements was material and a substantial reason that Plaintiffs and the Class purchased or leased the Class Vehicles.

136.    Plaintiffs and the Class were harmed as a result of Defendants' false statements, and are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiffs and the Class. Plaintiffs and the Class lack an adequate remedy at law and are thus entitled to equitable relief.  Injunctive relief is necessary to prohibit Defendants from continuing to engage in the unlawful practices alleged herein.

## COUNT VII

### (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, Cal. Civil Code §§ 1792 and 1791.1, et seq.)

### (Against Defendants On Behalf of All Class Members)

137.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

138.    Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of the members of the Class.

139.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

140.    Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their charging systems suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

28

141. Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their charging systems were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their charging systems would be fit for their intended use while the Class Vehicles were being operated.

142. Contrary to the applicable implied warranties, the Class Vehicles and their charging systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective design of their charging systems.

143. Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class Members, pray for a judgment:

a. Determining that this action is a proper class action and certifying the Class, as defined herein;

b. Appointing Plaintiffs as Class Representatives;

c. Appointing the undersigned as Class Counsel;

d. Finding Defendants liable to Plaintiffs and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e. Awarding statutory damages as appropriate;

f. Awarding disgorgement of gross profits and all other forms of equitable monetary relief;

g. Awarding punitive damages based on Defendants' malicious,

29

SECOND AMENDED CLASS ACTION COMPLAINT

oppressive, fraudulent, wanton and reckless behavior;

      h.    Awarding pre- and post-judgment interest;

      i.    Awarding injunctive relief, as claimed herein or as the Court may deem proper;

      j.    Awarding Plaintiffs and Class Members attorney fees and all litigation costs;

      k.    Awarding Plaintiffs and Class Members such other relief as may be just and proper;

      l.    Awarding compensatory damages against Defendants in favor of Plaintiffs and the Class for damages sustained as a result of Defendants' wrongdoing; and

      m.    Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: January 30, 2026           Respectfully submitted,

*/s/ Andrew D. Bluth*
CHRISTOPHER R. RODRIGUEZ (SB# 212274)
crodriguez@singletonschreiber.com
ANDREW D. BLUTH (SB# 232387)
abluth@singletonschreiber.com
JOHN R. TERNIEDEN (SB# 330343)
jternieden@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

SECOND AMENDED CLASS ACTION COMPLAINT

Additional Counsel For *Plaintiffs*:

DAVID GREIFINGER, (SB# 105242)
tracklaw@me.com
**LAW OFFICES OF DAVID R. GREIFINGER**
1515 Sunset Blvd., No. 214
Pacific Palisades, California 90272
Telephone: (434) 330-0193
Facsimile: (831) 920-4864

HOWARD A. GOLDSTEIN, (SB# 166005)
howard@hgoldstein.attorney
**LAW OFFICES OF HOWARD A. GOLDSTEIN**
13701 Riverside Drive, Suite 700
Sherman Oaks, CA 91423
Telephone: (818) 981-1010
Facsimile: (818) 981-1311

SECOND AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I, Andrew D. Bluth hereby certify that on January 30, 2026, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

/s/ Andrew D. Bluth
Andrew D. Bluth

SECOND AMENDED CLASS ACTION COMPLAINT